WALTER R. GUSTIN and LORRAINE GUSTIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gustin v. Commissioner
Docket No. 26162-81.
United States Tax Court
T.C. Memo 1983-592; 1983 Tax Ct. Memo LEXIS 188; 46 T.C.M. (CCH) 1505; T.C.M. (RIA) 83592; September 26, 1983. Robert E. Dallman and Patricia C. Bradford, for the petitioners. James M. Klein, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $1,725 in petitioners' 1978 income taxes. After concessions, the issue remaining for our determination is whether petitioners' expenses incurred in connection with attending investment organization conventions are deductible under section *189 212. [1]
FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Because the result in this case is based on relatively rare circumstances, the facts are set forth in substantial detail. Petitioners Walter R. Gustin and Lorraine Gustin are husband and wife, and resided in Brown Deer, Wisconsin, during the year in issue and when the petition in this case was filed. Petitioners timely filed their joint 1978 Federal income tax return with the Internal Revenue Service in Kansas City, Missouri. On Schedule A of that return, petitioners claimed an investment expense deduction of $2,641, comprised primarily of amounts spent by Lorraine Gustin (petitioner) in attending three investment conventions. Respondent disallowed $2,575 of that deduction, concluding "these expenditures do not meet the requirements of either section 162 or 212 of the Internal Revenue Code." Respondent determined that the amounts disallowed were spent on *190 personal expenses incurred by petitioner. In 1964, petitioner joined a local investment club that was part of the National Association of Investment Clubs (NAIC). She was a director of the NAIC from 1972 through at least the time of trial. She served as secretary of the organization in 1978 (and became its president in 1980). The NAIC is a nonprofit organization that has been in existence since at least 1951. It is similar to a trade association, and one of its functions is the education of investors in the trading of stock and securities. The objective of the NAIC is to educate its members in the ways of the stock market in order to make them more comfortable about investing. Since 1951, the NAIC has held annual conventions wherein delegates from member clubs and individual members come to workshops and listen to speakers on topics of widespread interest to members. At these conventions, publicly held corporations send executives to give presentations about their companies. The corporations also purchase display-type booths for the purpose of educating possible investors about their companies. As of the time of trial, the NAIC had 60,000 individual members and approximately *191 6,000 investment member clubs. Petitioner was a member of her local investment club for 5 years before she began investing. By 1978, she was devoting up to 12 hours a week to her investment activities, which consisted of visiting other investment clubs, following the stock market, speaking to other and more sophisticated investors about their investment strategies, researching the companies suggested to her by her observations and conversations, and analyzing the worth of the stocks she owned or would like to buy. After such analysis, she might then purchase the stock if she deemed it appropriately priced. If it was overpriced according to her analysis, petitioner might follow it for a while and wait for the price to drop before buying. Petitioner utilized several brokers who placed buy and sell orders for her and made investment recommendations, but she preferred to make her own investment decisions based upon her own educated judgment. In 1978, petitioner worked full time for her husband's insurance agency as the person in charge of the financial department, and she reported wages of $24,999.84 from her employment there. The total dividends received by petitioners from 15 *192 stocks owned during 1978 were $2,965. During that year, they reported capital gains and losses from 16 transactions, and petitioner acquired 11 different stocks at a cost of $42,970.86. At that time she had a personal stock portfolio worth approximately $98,000. Between April 26 and April 29, 1978, petitioner travelled to Amsterdam, The Netherlands, to attend the World Congress of Investment Clubs (World Congress). She acted as a secretary for the convention (and since then has been secretary of that organization). The convention offered speeches by international analysts, who spoke about the effects of the American stock markets on their economies and vice versa; exhibitions by corporate representatives; and a tour of the DeBeers Corporation facility, which included a speech by its financial analyst regarding the potential benefits of investing in DeBeers. Petitioner attended 26-3/4 hours of sessions during the 4-day World Congress. In addition, while there petitioner spoke with European investors to learn what stocks the Europeans were investing in and to acquire a different perspective for looking at and investing in the U.S. market. She acquired numerous annual reports *193 of companies and other information to read upon her return. As a result of what she learned on her tour of the DeBeers facility, she bought DeBeers stock, which she still owned as of the time of trial. Petitioner was in Amsterdam for 4 or 5 days and then went with a group from the NAIC to the Greek Islands. Petitioner testified at trial that the NAIC usually tries to arrange a vacation package to follow a European convention to enable its members to take advantage of the fact that they have already paid to get to Europe and that air fares are less expensive if the stay overseas is longer than a week. On her 1978 return, petitioner deducted $905 for the cost of travel, hotel accommodations, meals, and registration in connection with her attendance at the World Congress. No part of this amount is attributable to her trip to Greece. Respondent has conceded that the amounts deducted in connection with petitioner's trip to Amsterdam have been substantiated and are reasonable if they are determined to be otherwise deductible under section 212. In June 1978, petitioner attended a 3-day regional planning conference of the NAIC in Cleveland, Ohio. Mr. Gustin accompanied his wife *194 to Cleveland and also attended the conference. Petitioner testified that this meeting was of special interest to her because she could listen to a particular reportedly knowledgeable speaker and because she could speak with representatives of particular corporations in which she had investment-oriented interest. While she was at the convention, petitioner met with a representative of the Van Dorn Corporation, a Cleveland company whose securities she owned at that time. Although petitioner received $375 in dividends from Van Dorn Corporation in 1978, as a result of her discussions, she subsequently sold and later repurchased shares in that company. She also acquired a new investment strategy from a speaker at the convention who recommended buying "income stocks" to cushion a portfolio during had market periods. Petitioner deducted as an investment expense $253.03 spent on travel, meals, and hotel accommodations in connection with the Cleveland conference. Respondent agrees this amount has been substantiated and is reasonable if it is otherwise deductible under section 212. From August 1 to August 5, 1978, petitioner attended the annual convention of the NAIC in San Diego, California. *195 Besides presenting speeches by respected securities analysts and economists from around the country, the convention organizers sold booths to corporate representatives who were available to discuss their corporations with individuals. Petitioner testified that meeting with these representatives allowed her to gauge management intelligently rather than guessing what management is doing. For example, petitioner testified that she spoke with the management of a company named RPM, Inc., who told her that the company was changing its policy of declaring stock splits to declaring (cash) dividends. Petitioner decided that her investment would not grow quickly enough under the new policy, and she sold her shares of RPM, Inc., on December 20, 1978. While at the convention, petitioner, as part of her duties as a director of the NAIC, taught a workshop entitled "Stock Selection Guide--Part 1," which is a basic course in analyzing corporations for investment potential. She also helped with administration and selection of the programs and introduced a presenter at an awards ceremony. During the social periods of the convention, petitioner spoke with several knowledgeable people about *196 their investment ideas, and she subsequently utilized these ideas. For example, at a reception she spoke with Robert Nurock, a security analyst from New York, who often appears on a television program entitled "Wall Street Week," and with Charles J. Nicolosi, one of the speakers at the convention. Mr. Nicolosi spoke in general of the brewery industry and said he thought that G. Heileman Brewing Company was in a dangerous economic position. As a result of her conversation with Mr. Nurock, petitioner sold her shares of Combustion Equipment on August 24, 1978, and as a result of her conversation with Mr. Nicolosi, she sold her shares of G. Heileman Brewing on December 20, 1978. Petitioner also spoke with the president of the most successful investment club in the NAIC, Phil Ames; he told her that one of the companies she held stock in, Gerber Scientific, was having trouble with the computers in one of its products. Petitioner subsequently sold her shares of Gerber Scientific on December 20, 1978. Petitioner purchased stock in Golden West Homes as a result of a conversation about "young growth companies" she had with Raymond Dirks of Equity Research. In addition, she met with representatives *197 of several other companies in which she held stock to get additional information relevant to her investments. Petitioner's husband met her in San Diego after the conference, and they rented a car and drove to San Francisco where her husband had business to conduct. Petitioner deducted expenses of $1,274 for travel, hotel accommodations, meals, and registration in connection with her attendance at the national convention. This amount includes petitioner's return air fare from San Francisco, which cost the same as a return flight from San Diego. It does not include any cost attributable to her trip to San Francisco. Respondent agrees this amount has been substantiated and is reasonable if it is otherwise deductible under section 212. OPINION Section 262 provides that "except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." Section 212 permits a deduction for all of the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or the management, conservation, or maintenance of property held for the production of income. Section 1.212-1(d), Income *198 Tax Regs., provides that: Expenses, to be deductible under section 212, must be "ordinary and necessary." Thus, such expenses must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income. Respondent's denial of petitioner's investment expense deductions is based upon his determination that petitioner's attendance at the Amsterdam, Cleveland, and San Diego conventions was motivated by personal reasons and did not reasonably and proximately relate to the production or collection of income. Thus, argues respondent, under sections 262 and 212, the amounts expended by petitioner in connection with her attendance at these conventions are not deductible. In support of his argument that petitioner's attendance at the conventions was motivated by personal reasons and not for the production of income, respondent points to what he characterizes as the personal elements of petitioner's travel. These personal elements consist of petitioner's directors' duties at the San Diego and Amsterdam conferences, the trips taken subsequent *199 to each of those meetings, and her husband's presence at the convention in Cleveland. While it is true that petitioner travelled to both San Francisco and Greece after the national and international conferences and was accompanied to Cleveland by her husband, we are convinced that gathering investment strategy and information was petitioner's primary purpose in taking the trips. See 1.162-2(b), Income Tax Regs. Compare Habeeb v. Commissioner,559 F.2d 435 (5th Cir. 1977), affg. a petitioner of various functions at the conferences does not render her attendance at these conferences personal in nature within the meaning of section 262. As a director, petitioner was in a better position to meet and speak individually with the speakers who addressed the conventions. Petitioner's role as a director enhanced her ability to gather the information that she utilized in making her investments. As a director, petitioner was expected to help at the convention. These responsibilities were incidental and do not detract from the income-producing purpose for her attendance at the conventions. Respondent also claims that petitioner's expenses were not reasonably and proximately *200 related to her income-producing activities, as required by section 212. In support of this argument, respondent cites Kinney v. Commissioner,66 T.C. 122 (1976), in which we denied deduction of travel expenses incurred by an investor. Petitioner agrees that Kinney is controlling in this case, but argues that she has satisfied the reasonable and proximate relation test for deductibility set forth by this Court in the Kinney case. The taxpayer in the Kinney case made approximately 15 trips during the year but he was unable to establish that his trips had any direct effect on any stock transaction or that there was any particular reason in his overall investment scheme for selecting his travel destinations. We stated that an investor's travel expenses may be deductible (1) if the trip were part of a rationally planned, systematic investigation of business operations; (2) if the costs were reasonable in relation to the magnitude of the investment and the value of the information reasonably expected to be derived from the trip; (3) if the circumstances had negated a disguised personal motive for the travel; and (4) if there had been some showing of practical *201 application through investment decisions of the information gained from the trips. Petitioner has satisfied each of these criteria: Her attendance at the conventions was part of a rationally organized investigation into investment opportunities and strategies. The cost of her attendance at the conventions was $2,432, which is a reasonable amount to spend to protect and enhance a portfolio worth $98,000. The circumstances demonstrate to our satisfaction that any personal benefits of the trip were secondary to the investment benefits. Finally, petitioner proved that she directly utilized what she learned at the conventions in her investment plans. Petitioner is therefore entitled under section 212 to deduct her costs of attending these conventions. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩